1  KAREN P. HEWITT
   United States Attorney
2  ALESSANDRA P. SERANO
   Assistant United States Attorney
3  California State Bar No. 204796
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7084/(619) 557-7381 (Fax)
   Email: alessandra.p.serano@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8                  UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,        )  Criminal Case No. 08CR0544-BTM
                                     )
11          Plaintiff,               )  Date:      May 9, 2008
                                     )  Time:      2:30 p.m.
12          v.                       )
                                     )  GOVERNMENT'S RESPONSE AND
13  JOSE ANGEL GARCIA-GONZALEZ,      )  OPPOSITION TO DEFENDANT'S
                                     )  MOTIONS TO:
14          Defendant.               )
                                     )  (1)   COMPEL DISCOVERY;
15                                   )  (2)    RELEASE GRAND JURY TRANSCRIPTS
                                     )  (3) PROVIDE BILL OF PARTICULARS
16                                   )  (4) SUPPRESS EVIDENCE DUE TO ILLEGAL
                                     )     STOP
17                                   )  (5) SUPPRESS STATEMENTS AND
                                     )(6) LEAVE TO FILE FURTHER MOTIONS
18                                   )
                                     )TOGETHER WITH STATEMENT OF
19                                   )  FACTS, MEMORANDUM OF POINTS
                                     )  AND AUTHORITIES AND MOTION FOR
20                                   ) RECIPROCAL DISCOVERY
   _____ )
21

22          COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel

23  KAREN P. HEWITT, United States Attorney, and ALESSANDRA P. SERANO, Assistant U.S.

24  Attorney, and hereby files its Response and Opposition to the motions filed on behalf of defendant

25  JOSE ANGEL GARCIA-GONZALEZ which is based upon the files and records of this case.

26  //

27  //

28  //

# I

## STATEMENT OF THE CASE

On February 27, 2008, a federal grand jury for the Southern District of California returned an Indictment, charging the defendants with bringing in aliens for financial gain, transportation of illegal aliens, and aiding and abetting all in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(2)(B)(ii) and (v)(II) and 18 U.S.C. § 2.

# II

## STATEMENT OF FACTS

### A.    THE OFFENSE

On February 11, 2008 at approximately 7:50 a.m., off-duty San Diego Sheriff's Deputy Alvaro Marentes was leaving the range near an area known as the "triple nickel tubes" located on Alta Road in San Diego when he observed a silver Suburban parked on the shoulder of the southbound lanes of Alta Road.  This area is approximately 2 miles north of the international border and 1 mile east of the Otay Mesa Port of Entry.  The area is well known as an area where smugglers pick up illegal aliens who had just recently crossed the border.  Numerous reports of suspected alien smuggling have been reported in the area.

Deputy Marentes was driving an unmarked, white truck with spotlights mounted on the doors.  The Suburban was displaying multi-colored dealer plates.  He observed eight to ten people attempting to pile into the Suburban, and specifically observed Defendant attempting to push people into the vehicle.  As Deputy Marentes drove closer he saw Defendant look directly at him and then jump into the driver's seat of the vehicle.  Deputy Marentes also saw multiple people inside the vehicle looking back at him.  The vehicle took off at a high rate of speed.  Deputy Marentes attempted to follow the vehicle, which had reached speed in excess of 95 miles per hour and ran multiple red lights at various intersections on Otay Mesa Road.  Due to the dangerous situation and high rates of speed, Deputy Marentes ceased to follow the vehicle.  He later made contact with Border Patrol and advised of the incident.

Border Patrol agents recalled a similar looking vehicle being involved in a high speed chase about one week prior where the vehicle and its occupants were able to evade law enforcement.  On

1    this occasion, agents were able to observe the vehicle traveling at a high rate of speed westbound

2    on SR 905 towards I-5.  Agents were also able to observe the vehicle weaving in and out of traffic

3    and appeared to be heavily laden with dealer plates.  The vehicle eventually traveled in excess of

4    90 mph onto I-5 northbound.  Agents observed the vehicle driving on the median where traffic was

5    congested.  Ultimately, the vehicle exited I-5 at the Mile of Cars exit.  The vehicle continued to

6    drive at a high rate of speed and speed through red traffic lights.  Agents lost sight of the vehicle

7    for approximately two minutes until the vehicle made its way onto SR 54 eastbound near

8    Sweetwater Road.  Agents continued to follow the vehicle onto SR 94 eastbound towards

9    Downtown where it exited at 28th Street.

10          Border Patrol Agent Wallace responded to the area near 28th Street where the vehicle was

11   last observed in an attempt to find the vehicle and its occupants.  Near the corner of 27th Avenue

12   and E Street, he observed the Defendant walking down the road talking on a cellular phone.

13   Defendant looked directly at Agent Wallace as he was talking into his radio where it appeared that

14   Defendant recognized Agent Wallace as law enforcement.  Agent Wallace observed Defendant's

15   eyes become enlarged and he appeared surprised.

16          Agent Wallace made contact with Defendant, identified himself as a Border Patrol agent

17   and asked Defendant about his immigration status.  Defendant responded that he was a United

18   States citizen.  Agent Wallace asked Defendant for identification and Defendant presented a

19   Mexican Voter Registration Card.  Agent Wallace then asked if Defendant had documents

20   allowing him to be in the United States legally, and he stated he did not.  Defendant was placed

21   into custody.  Agent Wallace recovered two cell phones from Defendant.

22          Agents located the vehicle near 26th Street and Broadway, and began to search for the

23   occupants.  Agents drove by two male subjects, one identified as the co-defendant, Alfonso

24   Valentino-Casecas, near 25th and Broadway, talking on the phone and appearing lost and nervous.

25   Agent discovered that neither person had a legal right to be in the United States and both were

26   taken into custody.  Soon thereafter, agents searched the area found 13 people hiding in a dumpster

27   near 26th Street and C Street.  All thirteen people stated they were Mexican citizens with no legal

28   right to remain the United States.

1    As agents brought Defendant to the Chula Vista booking station, Deputy Marentes

2    immediately recognized him and stated "that's him, that's the driver, that's the guy I saw." Both

3    defendants and 14 subjects were processed.

4    **B.    DEFENDANT'S STATEMENTS**

5    Defendant was advised of his <u>Miranda</u> rights in Spanish. The interview was recorded.

6    Defendant acknowledged his rights and agreed to speak to agents.

7    Defendant stated he was a citizen of Mexico with no legal documents to remain in the

8    Untied States. He admitted to being ordered deported by an immigration judge. He claimed that

9    he entered the Untied States on January 15, 2008 by walking across the border through the hills

10   hear Otay Mesa, California.

11   When asked why he was in the vicinity of Broadway and 27th Street, he stated he lived at

12   L Street and 25th Street, but later recanted and admitted that he was supposed to meet the group

13   of illegal aliens who were found in the dumpster by a man named Pedro Aguilar. He claimed that

14   Aguilar allowed him to live in the Suburban. When confronted with the eyewitness reports of him

15   being the driver, he then claimed that he was only a passenger and denied driving the Suburban.

16   He claimed Aguilar drove the vehicle, not him. Defendant claimed that he was falling asleep

17   during the whole chase and does not recall any of the reckless driving. Agents confronted him

18   with his numerous lies and inconsistencies and terminated the interview.

19   **C.    Co-Defendant's Statements**

20   The co-defendant was advised of his <u>Miranda</u> rights which he acknowledged and waived.

21   He stated that he is a footguide who crossed the group of aliens earlier in the day. He called his

22   boss to arrange for transportation and a few minutes later the silver Suburban appeared. Soon after

23   that, he saw a "civil" which is an unmarked law enforcement vehicle. He jumped into the vehicle

24   with the group of illegal aliens he crossed and the vehicle sped off. He stated that the driver of the

25   vehicle did not cross the border with him.

26   **C.    The Material Witnesses' Statements**

27   Three material witnesses were interviewed. All three witnesses stated that they were

28   citizens of Mexico with no legal right to enter or remain in the United States. Each stated that they

1    crossed with 13 others with a footguide.  The group stopped when the vehicle arrived and all 14

2    aliens plus the smuggler entered the vehicle.  None of the witnesses could identify the driver or the

3    footguide from a series of photos.

### III

### UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES

**A.      The Motion to Compel Discovery Should Be Denied**

7          The Government intends to fully comply with its discovery obligations under Brady v.

8    Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal

9    Rules of Criminal Procedure.  The Government anticipates that most discovery issues can be

10   resolved amicably and informally, and has addressed Defendant's specific requests below.

**(1)      The Defendant's Statements**

12         The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to

13   provide to Defendant the substance of Defendant's oral statements and Defendant's written

14   statements.  The Government has produced all of Defendant's written statements that are known

15   to the undersigned Assistant U.S. Attorney at this date and has also produced all available

16   videotapes and/or audiotapes.  If the Government discovers additional oral or written statements

17   that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be

18   provided to Defendant.

19         The Government has no objection to the preservation of the handwritten notes taken by any

20   of the Government's agents and officers.  See United States v. Harris, 543 F.2d 1247, 1253 (9th

21   Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective

22   government witnesses).  However, the Government objects to providing Defendant with a copy

23   of any rough notes at this time.  Rule 16(a)(1)(A) does not require disclosure of the rough notes

24   where the content of those notes have been accurately reflected in a type-written report.  See

25   United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573,

26   583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where

27   there are "minor discrepancies" between the notes and a report).  The Government is not required

28   to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements"

1   (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim

2   narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United

3   States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not

4   constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d

5   1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes

6   were scattered and all the information contained in the notes was available in other forms). The

7   notes are not Brady material because the notes do not present any material exculpatory

8   information, or any evidence favorable to Defendant that is material to guilt or punishment.

9   Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither

10  favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos,

11  27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence

12  was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable

13  under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

14              **(2)    Arrest Reports, Notes and Dispatch Tapes**

15          The United States has provided the Defendant with arrest reports. As noted previously,

16  agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16

17  discovery.

18              **(3)    Brady Material**

19          Again, the United States is well aware of and will continue to perform its duty under Brady

20  v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose

21  exculpatory evidence within its possession that is material to the issue of guilt or punishment.

22  Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be,

23  favorable to the accused, or which pertains to the credibility of the United States' case. As stated

24  in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution

25  does not have a constitutional duty to disclose every bit of information that might affect the jury's

26  decision; it need only disclose information favorable to the defense that meets the appropriate

27  standard of materiality." Id. at 774-775 (citation omitted).

28

1    The United States will turn over evidence within its possession which could be used to

2    properly impeach a witness who has been called to testify.

3    Although the United States will provide conviction records, if any, which could be used

4    to impeach a witness, the United States is under no obligation to turn over the criminal records of

5    all witnesses.  United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976).  When disclosing such

6    information, disclosure need only extend to witnesses the United States intends to call in its case-

7    in-chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini,

8    607 F.2d 1305, 1309 (9th Cir. 1979).

9    Finally, the United States will continue to comply with its obligations pursuant to

10    United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

11    **(4)    Sentencing Information**

12    Defendant claims that the United States must disclose any information affecting

13    Defendant's sentencing guidelines because such information is discoverable under Brady v.

14    Maryland, 373 U.S. 83 (1963).  The United States respectfully contends that it has no such

15    disclosure obligation under Brady.

16    The United States is not obligated under Brady to furnish a defendant with information

17    which he already knows.  United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  Brady

18    is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already

19    known to the defendant.  In such case, the United States has not suppressed the evidence and

20    consequently has no Brady obligation.  See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

21    But even assuming Defendant does not already possess the information about factors which

22    might affect his guideline range, the United States would not be required to provide information

23    bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of

24    guilty and prior to his sentencing date.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th

25    Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time

26    when the disclosure remains in value.").  Accordingly, Defendant's demand for this information

27    is premature.

28

1   **(5)    Defendant's Prior Record.**

2   The United States has already provided Defendant with a copy of his criminal record in

3   accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

4   **(6)    Proposed 404(b) Evidence and 609 Evidence**

5   Should the United States seek to introduce any similar act evidence pursuant to Federal

6   Rules of Evidence 404(b) or 609, the United States will provide Defendant with notice of its

7   proposed use of such evidence and information about such other acts at the time the United States'

8   trial memorandum is filed.

9   **(7)    Evidence Seized**

10   The United States has complied and will continue to comply with Rule 16(a)(1)(c) in

11   allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical

12   evidence which is within the possession, custody or control of the United States, and which is

13   material to the preparation of Defendant's defense or are intended for use by the United States as

14   evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

15   The United States, however, need not produce rebuttal evidence in advance of trial. <u>United</u>

16   <u>States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984), <u>cert. denied</u>, 474 U.S. 953 (1985).

17   **(8)    Tangible Objects**

18   The Government has complied and will continue to comply with Rule 16(a)(1)(E) in

19   allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all

20   tangible objects seized that is within its possession, custody, or control, and that is either material

21   to the preparation of Defendant's defense, or is intended for use by the Government as evidence

22   during its case-in-chief at trial, or was obtained from or belongs to Defendant.   The Government

23   need not, however, produce rebuttal evidence in advance of trial. <u>United States v. Givens</u>, 767

24   F.2d 574, 584 (9th Cir. 1984).

25   The Government opposes Defendant's specific request to view his A File and/or the A Files

26   of the material witnesses as irrelevant.  If counsel is able to articulate why such a viewing is

27   necessary to comply with discovery rules, the Government requests that such a request be made

28   in writing.

**(9)    Evidence of Bias or Motive to Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(10)    Impeachment Evidence**

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

**(11)    Criminal Investigation of Government Witness**

Defendants are not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. "[T]he criminal records of such [Government] witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)© to supply a defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the Government intends to call in its case-in-chief. When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

**(12)    Evidence Affecting Perception, Recollection, Communication or Truth-Telling**

The United States is unaware of any evidence indicating that a prospective witness has a problem with perception, recollection, communication, or truth-telling.

**(13)    Witness Addresses**

The Government has already provided Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant. A defendant in a non-capital

1  case, however, has no right to discover the identity of prospective Government witnesses prior to

2  trial.  See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d

3  1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United

4  States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996).   Nevertheless, in its trial memorandum, the

5  Government will provide Defendant with a list of all witnesses whom it intends to call in its case-

6  in-chief, although delivery of such a witness list is not required.  See United States v. Discher, 960

7  F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).   The

8  Government is not aware of any "tips" provided by anonymous or identified persons that resulted

9  in Defendant's arrest.

10      The Government objects to Defendant's request that the Government provide a list of every

11  witness to the crimes charged who will not be called as a Government witness.  "There is no

12  statutory basis for granting such broad requests," and a request for the names and addresses of

13  witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)©."  United

14  States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F.

15  Supp. 444, 502 (D. Del. 1980)).   The Government is not required to produce all possible

16  information and evidence regarding any speculative defense claimed by Defendant.  Wood v.

17  Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not

18  likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure

19  under Brady).

20      **(14)    Witnesses Favorable to the Defendant**

21      As stated earlier, the Government will continue to comply with its obligations under Brady

22  and its progeny.  Other than the material witness in this case, the Government is not aware of any

23  witnesses who have made an "arguably favorable statement concerning the defendant or who could

24  not identify him or who w[ere] unsure of his identity, or participation in the crime charged."

25      **(15)    Statements Relevant to the Defense**

26      To reiterate, the United States will comply with all of its discovery obligations.  However,

27  "the prosecution does not have a constitutional duty to disclose every bit of information that might

28  affect the jury's decision; it need only disclose information favorable to the defense that meets the

1    appropriate standard of materiality." <u>Gardner</u>, 611 F.2d at 774-775 (citation omitted).  Further,

2    Defendant is not entitled to the Grand Jury transcripts.

3    **(16)    Jencks Act Material**

4    The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified

5    on direct examination, the Government must give the Defendant any "statement" (as defined by

6    the Jencks Act) in the Government's possession that was made by the witness relating to the

7    subject matter to which the witness testified. 18 U.S.C. § 3500(b).  A "statement" under the Jencks

8    Act is (1) a written statement made by the witness and signed or otherwise adopted or approved

9    by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's

10    oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).  If notes

11    are read back to a witness to see whether or not the government agent correctly understood what

12    the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks

13    Act. <u>United States v. Boshell</u>, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing <u>Goldberg v. United</u>

14    <u>States</u>, 425 U.S. 94, 98 (1976)).  While the Government is only required to produce all Jencks Act

15    material <u>after</u> the witness testifies, the Government plans to provide most (if not all) Jencks Act

16    material well in advance of trial to avoid any needless delays.

17    **(17)    Giglio Information**

18    As stated previously, the United States will comply with its obligations pursuant to <u>Brady</u>

19    <u>v. Maryland</u>, 373 U.S. 83 (1963), the Jencks Act, <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir.

20    1991), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

21    **(18)    Agreements Between the Government and Witnesses**

22    The Government has not made or attempted to make any agreements with prospective

23    Government witnesses for any type of compensation for their cooperation or testimony.

24    **(19)    Informants and Cooperating Witnesses**

25    The Government must generally disclose the identity of informants where (1) the informant

26    is a material witness, or (2) the informant's testimony is crucial to the defense. <u>Roviaro v. United</u>

27    <u>States</u>, 353 U.S. 53, 59 (1957).  If there is a confidential informant involved in this case, the Court

28    may, in some circumstances, be required to conduct an in-chambers inspection to determine

1    whether disclosure of the informant's identity is required under Roviaro.   See United States v.

2    Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997).  If the Government determines that there

3    is a confidential informant who is a material witness in this case, the Government will either

4    disclose the identity of the informant or submit the informant's identity to the Court for an in-

5    chambers inspection.

6    **(20)    Bias by Informants or Cooperating Witnesses**

7    As stated above, the United States is unaware of any evidence indicating that a prospective

8    witness is biased or prejudiced against Defendant.  The United States is also unaware of any

9    evidence that prospective witnesses have a motive to falsify or distort testimony.

10   **(21)    Law Enforcement Personnel Files**

11   The United States will continue to comply with its obligations pursuant to United States

12   v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

13   **(22)    Expert Summaries**

14   The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written

15   summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705

16   of the Federal Rules of Evidence during its case-in-chief at trial.  This summary shall include the

17   expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those

18   opinions.

19   **(23) Residual Request**

20   The Government has already complied with Defendant's request for prompt compliance

21   with its discovery obligations.  The Government will comply with all of its discovery obligations,

22   but objects to the broad and unspecified nature of Defendant's residual discovery request.

23   **(24)    Preservation of Evidence**

24   The United States will preserve all evidence to which Defendant is entitled pursuant to the

25   relevant discovery rules.  However, the United States objects to Defendant's blanket request to

26   preserve all physical evidence.

27   The United States has complied and will continue to comply with Rule 16(a)(1)(C) in

28   allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical

1  evidence which is within his possession, custody or control of the United States, and which is

2  material to the preparation of Defendant's defense or are intended for use by the United States as

3  evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

4  The United States has made the evidence available to Defendant and Defendant's investigators and

5  will comply with any request for inspection.

6       Again, the United States will continue to comply with its obligations pursuant to

7  United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

8       **B.    The Motion to Release Grand Jury Transcripts Should Be Denied**

9       Defendant next requests the disclosure of the grand jury transcripts in this case.  This

10  motion should be denied because (1) the Government does not intend to call anyone who

11  testified before the grand jury for trial and (2) the decision in United States v. Lopez, 484 F.3d

12  1186 (9th Cir. 2007) supports such a charges for aiding and abetting the bringing in for

13  financial gain in this case because the "initial transporter" (Defendant 2 - the footguide)

14  continued with the group of aliens as the group was loaded into the vehicle which Defendant

15  was driving.  Neither argument supports a basis for disclosure and the motion should be denied.

16       Defendant contends without any legal basis that "there can be no meaningful distinction

17  between "dropping off" the aliens and terminating active involvement in the transportation."

18  See Motion at 11.  However, this situation is precisely the type of case Lopez alludes to:

19  someone who assists the "initial transporter" with the continuing offense of bringing in aliens

20  for financial gain.  Lopez, 484 F.3d at 1192-1201.  Lopez dealt with a person who dropped a

21  group of aliens off and Lopez picked them up and transported them wholly within the United

22  States.  Lopez at 1189.  Here in this case, there was no "dropping off"; instead, the "initial

23  transporter" (the footguide who led the group across the border) continued to transport the

24  group with the assistance of Defendant.  Based upon this theory, if proven at trial, Defendant

25  would be guilty of aiding and abetting the bringing in of illegal aliens for financial gain.

26       Defendant's only claim for release of the transcripts is that he wants to make sure the

27  Government did not misinstruct the grand jury.  This is not enough to warrant the release of the

28

1  transcripts.  If Defendant can identify something specific that was done incorrectly with the

2  grand jury, the Government requests that such a motion be done in writing so that the

3  Government can respond.  Without more, the motion should be denied.

4          **C.**        <u>**The Motion for a Bill of Particulars Should be Denied**</u>

5          Defendant next contends that if the motion to release grand jury transcripts is denied,

6  then the Government should provide a bill of particulars.  This motion should also be denied

7  because the discovery previously produced combined with the above explanation as to how

8  Counts 1, 3, and 5 apply to him are sufficient to put the Defendant on notice as to the charges

9  and able him to present a defense if he so chooses.

10          The purpose of a bill of particulars is: (1) to minimize the danger of surprise at trial; (2)

11  to provide sufficient information on the nature of the charges to allow preparation of a defense;

12  and (3) to protect against double jeopardy.  <u>United States v. Robertson</u>, 15 F.3d 862, 874 (9th

13  Cir. 1994), <u>rev'd other grnds</u>,514 U. S. 669, 115 S. Ct. 1732 (1995), <u>reinstated in part</u>, 73 F.3d

14  249 (9th Cir. 1996); <u>United States v. Burt</u>, 765 F.2d 1364, 1367 (9th Cir. 1985).  Generally, an

15  indictment is sufficient if it sets forth the elements of the charged offense as to ensure the right

16  of the defendant not to be placed in double jeopardy and to be informed of the offense charged.

17  <u>United States v. Woodruff</u>, 50 F.3d 673, 676 (9th Cir. 1995).  There is also no need of a bill of

18  particulars because the indictment adequately advised defendant of the charges.  This can be

19  done in a variety of ways and is most generally accomplished in the indictment itself.  <u>United</u>

20  <u>States v. Robertson</u>, <u>supra</u> (bill of particulars appropriately denied where the indictment

21  contained the names of alleged coconspirators, the approximate dates on which the alleged

22  illegal conduct occurred, and the overt acts that comprised the illegal activity).  <u>Accord</u> <u>United</u>

23  <u>States v. DeCesare</u>, 765 F.2d 890, 897-98 (9th Cir.), <u>amended on other grounds</u>, 777 F.2d 543

24  (1985).

25          It is astonishing that Defendant "has no idea how the government will attempt to prove

26  the elements of Counts One, Three and Five" [Motion at 13:18-19] which form the basis for the

27  bringing in counts as the discovery already produced provides more than sufficient information

28

1   as to his involvement.  In particular, the statement of facts attached the complaint (Page 4), the

2   report of investigation (pages 13-15), the co-defendant's statement (page 19-20), and the

3   material witness statements (pages 21-23) all set out the theory of aiding and abetting the initial

4   transporter of bringing in illegal aliens for financial gain.  Simply put, Defendant has the

5   information he seeks already in counsel's possession and, for his convenience, listed above.

6   Accordingly, Defendant's motion should be denied.

7        **D.**    **The Motion to Suppress Based upon an Illegal Stop Should Be Denied**

8        Defendant next argues that the temporary detention of him was illegal, and therefore, all

9   fruits of the stop, including statements, should be suppressed.  As set forth below, his motion

10  should be denied.

11       "A temporary detention or seizure of a person is 'justifiable under the Fourth

12  Amendment if there is articulable suspicion that a person has committed or is about to commit

13  a crime.'" United States v. Woods, 720 F.2d 1022, 1026 (9th Cir. 1983) quoting Florida v.

14  Royer, 460 U.S. 491, 498 (1983).  The inquiry is whether "a police officer observes unusual

15  conduct which leads him to reasonably conclude in light of his experience that criminal activity

16  may be afoot." United States v. $109,179 in U.S. Currency, 228 F.3d 1080, 1084 (9th Cir.

17  2000) quoting Terry v. Ohio, 392 U.S. 1, 30 (1968).  If police have reasonable suspicion, a

18  Terry stop may also be used to investigate a completed felony, not just an ongoing one or in

19  anticipation of a crime.  United States v. Grigg, 498 F.3d 1070, 1074-5 (9th Cir. 2007).  There

20  is no "litmus-paper test" for determining when a seizure exceed the bounds of an investigative

21  stop.  United States v. Charley, 396 F.3d 1074, 1080 (9th Cir. 2005) citing Florida v. Royer,

22  460 U.S. at 506; Eberle v. City of Anaheim, 901 F.2d 814, 819 (9th Cir. 1990).  Instead, a court

23  should examine the totality of circumstances to determine whether reasonable suspicion existed

24  and look at whether "a reasonable innocent person in the same circumstances would not have

25  felt free to leave after brief questioning." Charley, 396 F.3d at 1080; Eberle, 901 F.2d at 819.

26       In this case, agents had reasonable suspicion to stop Defendant as he was walking down

27  the street.  First, he was in the vicinity of where the load vehicle was last seen.  Agents last saw

28

1    the vehicle exiting at 28th Street exit and traveling towards 27th Street.  Agent Wallace went

2    near the intersection of 27th Street and E Street where he observed Defendant walking at a

3    brisk pace and talking on a cell phone.  Second, Defendant's location combined with his

4    demeanor when Agent Wallace passed Defendant.  When Agent Wallace drove past Defendant,

5    Agent Wallace observed Defendant's eyes widen and he appeared surprised as if he recognized

6    Agent Wallace as law enforcement.  Based upon Agent Wallace's past experience and

7    Defendant's proximity to the last known area of the load vehicle, Agent Wallace conducted a

8    brief stop of Defendant, asked him his immigration status and asked for identification.  Agent

9    Wallace also noticed Defendant's pants were torn.  Defendant first lied and said he was a

10   United States citizen, but failed to produce any identification other than a Mexican Voter

11   Registration card.  Defendant later stated he was illegal and had no documents allowing him to

12   remain the United States.  Based upon this information, Agent Wallace placed him under arrest.

13          Proximity to the scene of a crime along with "other suspicious conduct" can

14   substantiate *probable cause* [United States v. Lopez, 482 F.3d 1067, 1075-6 (9th Cir. 2007)

15   citing  United States v. Valencia-Amezcua, 278 F.3d 901, 906-8 (9th Cir. 2002)], so similar

16   circumstances will also substantiate reasonable suspicion.  Moreover, the reasoning in United

17   States v. Galindo-Gallegos, 244 F.3d 728 (9th Cir. 2001) holding that brief detention and

18   questions posed to suspected illegal aliens concerning immigration status was proper, is

19   relevant here.  The stop of the Defendant here was due to his close proximity to the last known

20   location of the suspected load vehicle combined with his reaction to Agent Wallace as law

21   enforcement, and not as Defendant asserts, his ethnicity.  Agent Wallace conducted a brief

22   immigration check, which was limited in scope and duration.  Upon learning of Defendant's

23   illegal status, he was placed in custody and brought back to the Chula Vista Border Patrol

24   Station for processing.

25          The stop was based upon reasonable suspicion.  Defendant has not provided any

26   contrary information, and therefore, as a matter of law, his motion should be denied without the

27   need of an evidentiary hearing.

28

**E.    The Motion to Suppress Statements Should Be Denied**

Defendant contends that all of his statements should be suppressed due to <u>Miranda</u> violations.  Defendant statements should be admitted into evidence, without a hearing, as there is nothing to indicate any violation of Defendant's rights.

**1.    Post-Miranda Statements**

After his arrest, Defendant was advised of his <u>Miranda</u> rights.  Defendant waived those rights, and agreed to questioning.  Defendant made several statements concerning his whereabouts and travel.  The requirements of <u>Miranda</u> were satisfied and all of Defendant's statements are admissible against him.

**a.    Standards Governing Admissibility of Statements**

A statement made in response to custodial interrogation is admissible under <u>Miranda v. Arizona</u>, 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of rights, and was not elicited by improper coercion.  <u>See</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and <u>Miranda</u> determinations; valid waiver of <u>Miranda</u> rights should be found in the "absence of police overreaching").  Although the totality of circumstances, including characteristics of the defendant and details of the interview, should be considered, improper coercive activity must occur for suppression of any statement.  <u>See</u> <u>id.</u> (noting that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"); <u>cf.</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973) ("Some of the factors taken into account have included the youth of the accused; his lack of education, or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.") (citations omitted).  While it is possible for a defendant to be in such a poor mental or physical condition that they cannot rationally waive their rights (and  misconduct can be inferred based on police knowledge of such condition, <u>Connelly</u>, 479 U.S. at 167-68), the condition must be so severe that the defendant was rendered utterly incapable of rational choice.  <u>See</u> <u>United States v. Kelley</u>, 953 F.2d 562, 564 (9th Cir.1992)

1    (collecting cases rejecting claims of physical/mental impairment as insufficient to prevent exercise

2    of rational choice).

3    **b.    Standards Governing Grant or Denial of Evidentiary Hearing**

4        Under Ninth Circuit and Southern District precedent, as well as Southern District Local

5    Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to

6    suppress only when the defendant adduces specific facts sufficient to require the granting of the

7    defendant's motion.  See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where

8    "defendant, in his motion to suppress, failed to dispute any material fact in the government's

9    proffer, . . . . the district court was not required to hold an evidentiary hearing"); United States v.

10   Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite

11   and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to

12   suppress statements); Crim. L.R. 47.1.  The local rule further provides that "the Court need not

13   grant an evidentiary hearing where either party fails to properly support its motion for opposition."

14       No rights are infringed by the requirement of such a declaration.  Requiring a declaration

15   from a defendant in no way compromises defendant's constitutional rights, as declarations in

16   support of a motion to suppress cannot be used by the United States at trial over a defendant's

17   objection.  See Batiste, 868 F.2d at 1092 (proper to require declaration in support of Fourth

18   Amendment motion to suppress ); Moran-Garcia, 783 F. Supp. at 1271-74 (extending Batiste to

19   Fifth Amendment motion to suppress).  Moreover, Defendant has as much information as the

20   Government in regards to the statements he made.  See Batiste, 868 F.2d at 1092.  At least in the

21   context of motions to suppress statements, which require police misconduct incurred by Defendant

22   while in custody, Defendant certainly should be able to provide the facts supporting the claim of

23   misconduct.  Finally, any objection that 18 U.S.C. § 3501 requires an evidentiary hearing in every

24   case is of no merit.  Section 3501 requires only that the Court make a pretrial determination of

25   voluntariness "out of the presence of the jury."  Nothing in section 3501 betrays any intent by

26   Congress to alter the longstanding rule vesting the form of proof on matters for the court in the

27   discretion of the court.  Batiste, 868 F.2d at 1092 ("Whether an evidentiary hearing is appropriate

28   rests in the reasoned discretion of the district court.") (citation and quotation marks omitted).

1

**c.    Adequate Proof to Support Rejection of a Motion to Suppress**

2       The Ninth Circuit has expressly stated that a United States proffer based on the statement

3 of facts attached to the complaint is alone adequate to defeat a motion to suppress where the

4 defense fails to adduce specific and material facts.  See Batiste, 868 F.2d at 1092.  Moreover, the

5 Ninth Circuit has held that a District Court may properly deny a request for an evidentiary hearing

6 on a motion to suppress evidence because the defendant did not properly submit a declaration

7 pursuant to a local rule.  See United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991);

8 United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion

9 to suppress need be held only when the moving papers allege facts with sufficient definiteness,

10 clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."); see

11 also United States v. Walczak, 783 F. 2d 852, 857 (9th Cir. 1986) (holding that evidentiary

12 hearings on a motion to suppress are required if the moving papers are sufficiently definite,

13 specific, detailed, and nonconjectural to whether contested issues of fact exist).  Even if Defendant

14 provides factual allegations, the Court may still deny an evidentiary hearing if the grounds for

15 suppression consist solely of conclusory allegations of illegality.  See United States v. Wilson,

16 7 F.3d 828, 834-35 (9th Cir. 1993) (District Court Judge Gordon Thompson did not abuse his

17 discretion in denying a request for an evidentiary hearing where the appellant's declaration and

18 points and authorities submitted in support of motion to suppress indicated no contested issues of

19 fact).

20       As Defendant in this case has failed to provide declarations alleging specific and material

21 facts, the Court would be within its discretion to deny Defendant's motion based solely on the

22 statement of facts attached to the complaint in this case, without any further showing by the United

23 States.  Moreover, Defendant had an opportunity, in his moving papers, to proffer any facts

24 alleging violations of his rights, but failed to do so.  Instead, Defendant merely cited generic

25 Miranda law.  Defendant's allegation of a Miranda violation is mere boilerplate language that fails

26 to demonstrate there is a disputed factual issue requiring an evidentiary hearing.  See Howell, 231

27 F.3d at 623.

28

1    As such, this Court should deny Defendant's motion to suppress and hold, based on the

2    Statement of Facts attached to the Complaint, that Defendant's statements were voluntarily made.

3              **2.    Defendant's Statements were Voluntary**

4    A confession is voluntary if it is the "product of a rational intellect and a free will."

5    <u>Medeiros v. Shimoda</u>, 889 F.2d 819, 823 (9th Cir.1989) (quoting <u>Townsend v. Sain</u>, 372 U.S. 293,

6    307 (1963)).   A confession is involuntary when "under the totality of circumstances, the

7    government obtained the confession by coercion or improper inducement."   <u>United States v.

8    Turner</u>, 926 F.2d 883, 888 (9th Cir.) (quoting <u>United States v. Pinion</u>, 800 F.2d 976, 980 (9th

9    Cir.1986)).  The crucial question is whether Defendant's will was overborne when he confessed.

10   <u>See</u> <u>United States v. Miller</u>, 984 F.2d 1028, 1031 (9th Cir. 1988).

11   In the present case, there is no evidence to suggest that Defendant's statements were the

12   result of any coercion or improper inducement.  Accordingly, the statements as well as the fruits

13   of the lawful arrest are admissible.

14   Should the Court decide to conduct a voluntariness hearing, the Government requests that

15   such a hearing be done at the time of trial outside the presence of the jury.

16   **F.    Leave to File Further Motions**

17   The Government does not oppose this motion so long as any further motions filed are based

18   upon newly produced discovery or information not available now.

19                               **III**

20                    **UNITED STATES' MOTION**

21   **A.    Government's Motion for Reciprocal Discovery**

22        **1.    Rule 16(b)**

23   Defendant has invoked Federal Rule of Criminal Procedure 16(a) in his motion for

24   discovery and the Government has already voluntarily complied with the requirements of

25   Federal Rule of Criminal Procedure 16(a).  Therefore, Rule 16(b) should presently be

26   determined to be operable as to Defendant.

27   The Government, pursuant to Rule 16(b), hereby requests that Defendant permit the

28   Government to inspect, copy, and photograph any and all books, papers, documents,

1  photographs, tangible objects, or make copies of portions thereof, which are within the

2  possession, custody, or control of Defendant and which she intends to introduce as evidence in

3  her case-in-chief at trial.  The Government further requests that it be permitted to inspect and

4  copy or photograph any results or reports of physical or mental examinations and of scientific

5  tests or experiments made in connection with this case, which are in the possession or control

6  of Defendant, which she intends to introduce as evidence-in-chief at the trial or which were

7  prepared by a witness whom Defendant intends to call as a witness.  The Government also

8  requests that the Court make such orders as it deems necessary under Rule 16(d)(l) and (2) to

9  insure that the Government receives the discovery to which it is entitled.

10                  **2.    Rule 26.2**

11         Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of

12  all witnesses, except any statement of Defendant.  The rule provides for the reciprocal

13  production of Jencks statements.  The time frame established by the rule requires the statement

14  to be provided after the witness has testified, as in the Jencks Act.  Therefore, the Government

15  hereby requests that Defendant be ordered to supply all prior statements of defense witnesses

16  by a reasonable date before trial to be set by the Court.  This order should include any form

17  these statements are memorialized in, including, but not limited to, tape recordings,

18  handwritten or typed notes, and/or reports.

19                              **IV**

20                          **CONCLUSION**

21         For the above stated reasons, the Government respectfully requests that Defendant's

22  motions be denied, and that the Government's Motion for Reciprocal Discovery be granted..

23         DATED:        April 9, 2008.

24                                              Respectfully Submitted,

25                                              KAREN P. HEWITT
                                                United States Attorney

26

27                                              s/Alessandra P. Serano
                                                ALESSANDRA P. SERANO
28                                              Assistant United States Attorney

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | SOUTHERN DISTRICT OF CALIFORNIA |

| | | | |
|---|---|---|---|
| 3 | UNITED STATES OF AMERICA, | ) | Case No. 08CR0544-BTM |
| 4 | Plaintiff, | ) | |
| 5 | v. | ) | CERTIFICATE OF SERVICE |
| 6 | JOSE ANGEL GARCIA-GONZALEZ | ) | |
| 7 | Defendant. | ) | |

8

IT IS HEREBY CERTIFIED THAT:

9

10      I, ALESSANDRA P. SERANO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

11

12      I am not a party to the above-entitled action. I have caused service of United States' Response and Opposition to Defendant's Motions and Motion for Reciprocal Discovery on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

13

14      Michelle Betancourt, Esq.
        Federal Defenders of San Diego, Inc.

15

16      I declare under penalty of perjury that the foregoing is true and correct.

17      Executed on April 9, 2008.

18                                      s/Alessandra P. Serano
                                        ALESSANDRA P. SERANO

19

20

21

22

23

24

25

26

27

28